JAMIR DAVIS, ESQ. SBN 98041 PRO HAC VICE
**J. DAVIS LAW FIRM, PLLC**
P.O. BOX 122123
COVINGTON, KY 41011
TELE: 859-750-5033
JDAVISLAWKY@GMAIL.COM

ATTORNEY FOR PLAINTIFF

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| ANTHONY MARIO WYNN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF COVINGTON; DOUG ULLRICH; JOHN MURPHY; DANNY ELSBERND; ROBERT NADER AND DOES 1-50 individually and in official capacities as police officers for the City Covington inclusive.<br><br>Defendants. | CASE NO:<br><br>COMPLAINT FOR VIOLATION OF TITLE 42 USC § 1983, *MONELL* CLAIM, VIOLATION OF KENTUCKY STATUTES, VIOLATION OF COMMON LAW TORTS, AND DAMAGES<br><br>JURY TRIAL DEMANDED |

**<u>INTRODUCTION</u>**

1. After being released from prison in March of 2018 Anthony Wynn was committed to changing his life and taking care of his newborn daughter.

2. This is a compelling story of how Anthony, a man with a troubled past, who was looking for a way out of the vicious cycle of the criminal justice system, was derailed by constant harassment, racial profiling, and frequent violations of his Constitutional rights by the Covington Police Department.

3. Since his youth Anthony Wynn has had difficulty navigating life.

4. Anthony Wynn was born and raised in Cincinnati, Ohio to Cindy Wynn a single mother.

5. At a young age Anthony was diagnosed with learning disabilities and mental health disorders including depression and ADHD.

6. Anthony's inability to focus for extended periods of time caused him difficulty in school.

7. As a child he had trouble reading and quickly found himself disinserted in continuing his education.

8. This led Anthony to find acceptance from peers in his neighborhood and would eventually lead to him befriending people of the wrong crowd.

9. As a result, during his adolescence years Anthony would spend significant time in juvenile detention centers.

10. However, despite his challenges Anthony would eventually graduate high school while detained at Elizabethtown Juvenile Detention Center.

11. After his release for the Juvenile Dentition Center Anthony's mental health disorders went untreated and as a result he would continue to find himself in and out of trouble with the law.

12. In March of 2018 Anthony would have his first child and commit himself to care for himself and his family.

13. However, the Covington Police Department and its agents did not embrace Anthony in his change.

14. But instead, the Covington Police Department and its agents constantly harassed and profiled Anthony to rope him back into the vicious criminal justice system.

15. Anthony does not claim to be perfect by any means however, he is an American citizen who has been afforded Constitutional Rights by the simple fact of being born in the United States of America.

16. This Complaint, body worn camera footage, witness statements and other discoverable evidence clearly demonstrate that Anthony's Constitutional Rights were severely violated by the intentional and negligent actions of Covington Police Department and its agents.

## **JURISDICTION**

17. This action arises under Title 42 of the United States Code, Section 1983. Title 28 of the United States Code, Sections 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in Covington, Kentucky, which is within this judicial district. Title 28 of the United States Code Section 1391(b) confers venue upon this Court.

## ADMINISTRATIVE PREREQUISITES

18. Plaintiff is not required to comply with any administrative requirements under Kentucky law and due to the seriousness of the allegations Plaintiff does not believe that this is suitable for early settlement.

## PARTIES

19. Plaintiff ANTHONY WYNN (hereinafter referred to as "PLAINTIFF") is and at all times herein mentioned is a citizen of the United States and a resident of Northern Kentucky.

20. Defendant CITY OF COVINGTON (hereinafter referred to as "CITY") is and all times mentioned herein a municipal corporation, duly authorized to operate under the laws of the Commonwealth of Kentucky. Under its supervision, the CITY operates the Covington Police Department. The Covington Police Department employ's police officers and is responsible for the actions of its employees. PLAINTIFF believes that the CITY is legally responsible and liable for the incident, injuries and damages herein set forth. The CITY proximately caused injuries and damages because of the intentional and/or negligent actions of one or more of its employees, it breached is duty to PLAINTIFF to provide safety and security for the public, violated public policy when its employees used excessive force against PLAINTIFF. The CITY is liable for the actions of its employees, through vicarious or imputed liability and *Respondiat Superior*.

21. Defendant OFFICER DOUG ULLRICH (hereinafter referred to as "ULLRICH") is and all times mentioned herein is an adult and at all times herein mentioned is a citizen of the United States and a resident of Kentucky. ULLRICH was employed as a full-time employee of the CITY as a police officer. At all relevant times ULLRICH was under an oath as a law enforcement officer to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice.

22. Defendant OFFICER JOHN MURPHY (hereinafter referred to as "MURPHY") is and all times mentioned herein is an adult and at all times herein mentioned is a citizen of the United States and a resident of Kentucky. MURPHY was employed as a full-time employee of the CITY as a police officer. At all relevant times MURPHY was under an oath as a law enforcement officer to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice.

23. Defendant OFFICER DANNY ELSBREND  (hereinafter referred to as "ELSBREND") is and all times mentioned herein is an adult and at all times herein mentioned is a citizen of the United States and a resident of Kentucky. ELSBREND was employed as a full-time employee of the CITY as a police officer. At all relevant times ELSBREND was under an oath as a law enforcement officer to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality

and justice.

24. Defendant CHIEF ROBERT NADER  (hereinafter referred to as "NADER") is and all times mentioned herein is an adult and at all times herein mentioned is a citizen of the United States and a resident of Kentucky. NADER was employed as a full-time employee of the CITY as the chief of police and was responsible for ensuring that the hiring, transfer, suspension, promotion, discharge, assignment, reward or discipline of other department members, and directing the work of other members. At all relevant times NADER was under an oath as a law enforcement officer to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice.

25. PLAINTIFF is ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue said defendants by such fictitious names. PLAINTIFF will amend this complaint to allege their true names and capacities when ascertained. PLAINTIFF believes and alleges that each defendant is legally responsible and liable for the incident, injuries and damages herein set forth. Each defendant proximately caused injuries and damages because of his/her intentional and/or negligent actions, breach of duty, violation of public policy and/or use of excessive force. Each defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act of omission. PLAINTIFF will ask for leave to amend his complaint subject to further discovery.

26. In engaging in the conduct alleged herein, defendant police officers acted under the color of

law and in the course and scope of their employment with the CITY. In engaging in the conduct described herein, Defendant officers exceeded the authority vested in them as police officers, under the United States and Kentucky Constitutions, and as employees of the CITY.

## **STATEMENT OF FACTS**

### UNLAWFUL SEARCH and ATTACK

27. On August 28, 2020 at approximately 2:00 AM Plaintiff left his friends home in Cincinnati Ohio to travel back to his girlfriend's home in Covington Kentucky.

28. PLAINTIFF was using his brother's car at the time because his car was in need of repair.

29. In route to his girlfriend's home PLAINTIFF turned onto Howard Litzler Drive in Covington Kentucky.

30. PLAINTIFF immediately noticed a CITY police vehicle behind him.

31. The CITY police vehicle lights were activated.

32. PLAINTIFF proceeded to pull the vehicle he was driving to side of the road as he believed a lawful stop was taking place.

33. All of a sudden two additional CITY police vehicles coming from the opposite direction surrounded PLAINTIFF's vehicle and blocked him in.

34. At the time of incident PLAINTIFF was not on probation or parole.

35. An Unidentified Officer then immediately told PLAINTIFF to step out of the vehicle.

36. PLAINTIFF asked why he was being pulled over and tried to provide his drivers license, registration and proof of insurance to the Unidentified Officer.

37. The Undefined Officer told PLAINTIFF that he was uninterested in any of his documentation and demanded that PLAINTIFF immediately step out of the vehicle.

38. ULLRICH, who was in the second vehicle to arrive on the scene which approached from the

opposite direction, yelled from his vehicle and immediately demanded that PLAINTIFF step out of the vehicle.

39. ULLRICH having no evidence that a non-traffic violation had occurred then instructed the Unidentified Officer to force PLAINTIFF out of the vehicle immediately if PLAINTIFF did not comply with the command to exit the vehicle.

40. PLAINTIFF begged for officers not to pull him out of the vehicle because he had not broken any laws.

41. ULLRICH, who was still in his vehicle, then changed his story and alleged that he smelled marijuana and demanded that PLAINTIFF be removed.

42. PLAINTIFF had not been under the influence of any substance the entire day and had not smoked or used marijuana in the vehicle.

43. The Unidentified Officer then opened PLAINTIFF'S door and physically grabbed PLAINTIFF and forced PLAINTIFF out of the vehicle.

44. The Unidentified Officer with the assistance of ULLRICH immediately placed PLAINTIFF in hand cuffs in violation of PLAINTIFF'S Constitutional rights.

45. CITY and its agents do not have a history of using these policing these tactics with its non-African American citizens.

46. PLAINTIFF was scared and offended by the touching of his persons.

47. The Unidentified Officer and ULLRICH then searched the PLAINTIFF'S person by sticking their hands in PLAINTIFF'S pockets and other areas where PLAINTIFF had a reasonable expectation of privacy.

48. During the initial search of PLAINTIFF nothing was found on his person.

49. ULLRICH then demanded that PLAINTIFF consent to a second and more thorough search of

PLAINTIFF'S growing area.

50. PLAINTIFF refused to consent to the unlawful search.

51. ULLRICH and the Unidentified Officer then became increasingly upset with PLAINTIFF'S refusal and began to violently handle PLAINTIFF and aggressively forced a second search of his person.

52. ELSBERND the officer in the third vehicle to arrive on the scene then assisted ULLRICH and the Unidentified Officer in subduing PLAINTIFF so that ULRICH and the Unidentified Officer could commence the second search.

53. During the second unconstitutional search ULLRICH and the Unidentified Officer threw PLAINTIFF against a police vehicle causing damage to the vehicle and roughly grabbed and squeezed PLAINTIFF'S private parts causing significant injuries to his person.

54. PLAINTIFF was resistant to the offensive touching and unlawful search of his person.

55. ULLRICH, ELSBERND and the Unidentified Officer then slammed Plaintiff to the ground and attached him with hands and feet.

56. ULRICH attacked PLAINTIFF with hands and intentionally struck PLAINTIFF in the head with multiple rapid punches.

57. At some point during the attack PLAINTIFF became unconscious due to the force of the punches by ULLRICH.

58. Sometime later PLAINTIFF would awaken from his unconscious state, lying on the side of the road, face down with his pants down and his underwear cutoff.

59. PLAITIFF was confused by the violation.

60. The CITY Officers then claimed that they had found crack cocaine in PLAINTIFF'S underwear and marijuana in his pocket.

61. PLAINTIFF'S interaction with Police would result in him having a torn ligament in his shoulder, hernia in his growing, and severely injured writs along with other bruises and scraps on his face.

62. PLAINTIFF was so severely injured that he experienced blood in his urine for weeks.

63. ULLRICH stated in official police documents that he activated his body worn camera and that the camera depicts the events of that evening.

64. However, CITY now claims that the video no longer exists and as a supervisor NADER allowed for the evidence to be deleted and new of the constitutional violations and failed to discipline the officers appropriately.

65. PLAINTIFF was detained and Kenton County Detention center where he complained of his injuries.

66. While in custody for approximately forty days PLAINTIFF'S injuries went untreated.

### NEW YEAR'S EVE ATTACK

67. On New Year's Eve 2020 PLAINTIFF was at his girlfriend's home at 177 Promontory Drive Covington, Kentucky enjoying the evening with family and friends.

68. As more people began to arrive, the celebration unintentionally became loud and CITY Police Officer arrived at the residence.

69. CITY Police Officers, who did not have a warrant, immediately tried to force entry into the home.

70. CITY Police Officers then attempted to enter the home by kicking at the front door.

71. Unable to enter with kicks CITY Police Officers entered the side door which was unlocked.

72. MURPHY was one of the first officers to enter the home.

73. PLAINTIFF'S girlfriend never consented MURPHY entrance into her home.

74. MURPHY then demanded PLAINTIFF and his two friends out of a back bedroom.

75. PLAINTIFF was offended by the unlawful command and verbally complained to MURPHY as he attempted to complied with MURPHY'S command.

76. MURPHY unhappy with PLAINTIFF'S comments immediately grabbed PLAINTIFF and threw him down into his girlfriend's glass coffee table.

77. MURPHY and another Unidentified Officer's then Kneeled on PLAINTIFF'S neck and back with glass shattered beneath PLAITNIFF.

78. MURPHY then placed PLAINTIFF in handcuffs.

79. MURPHY and other unidentified officers would then force PLAINTIFF outside and require that he lie face down in mud.

80. The CITY does not have a history of policing its white citizens in this way and NADER knew of the violations to PLAINTIFF and failed to discipline the officers involved.

UNLAWFUL DETENTION AND ASSULT

81. On January 16, 2021 10:30 PM Plaintiff arrived  at a barber shop on 12th Street and Greenup in Covington Kentucky.

82. PLAINTIFF attempted to get a haircut earlier in the day but could not because the barber had a full schedule.

83. PLAINTIFF'S hair cut ended at approximately 11:45 PM

84. After his hair cut PLAINTIFF and his friends Yusef, Ricardo, Matthew and Michael, James, and Cameron, who were also at the barbershop, were all invited to a local bar by PLAINTIFF'S girlfriend.

85. PLAINTIFF and his friends accepted the invitation and walked to the bar but when they arrived it had already closed.

86. At which time PLAINTIFF and his friends decided to part ways and go home.

87. PLAINTIFF was using his mother vehicle that evening and asked his girlfriend's friend Kayla to drive him and his girlfriend home.

88. Kayla agreed.

89. PLAINTIFF and his friends began walking towards the vehicle which was parked on Garret and Bush.

90. PLAINTIFF, Kayla, and PLAINTIFF'S girlfriend, and Yusuf all entered the vehicle.

91. PLAINTIFF was sitting in the back on the driver's side.

92. Within moments of Kayla pulling off, CITY Police Officers immediately pulled behind the vehicle and turned on their lights.

93. Kayla pulled to the side of the road as she expected it to be a lawful traffic stop.

94. MURPHY approached the vehicle and stated that he was pulling the vehicle over because the driver did use the turn signal when she left the parking spot.

95. MURPHY then asked Kayla for her driver's license and she provided it.

96. MURPHY then asked all of the passengers for their information without cause or reason to believe they had committed a crime.

97. PLAINTIFF who was in the rear driver seat of the vehicle refused as he was not required to do so by law.

98. MURPHY ran the license plate of the vehicle and asked if PLAINTIFF was the son of Cindy Wynn and if so which son.

99. PLAINTIFF did not see it necessary to provide MURPHY with accurate information as it was not related to the initial traffic stop.

100. MURPHY then demanded PLAINTIFF out of the vehicle and immediately tried to slam

PLAINTIFF to the ground.

101.  MURPHY then placed PLAINTIFF in a choke hold and started punching him in the face.

102.  ULLRICH and ELBRICH then restrained PLAINTIFF while MRUPHY continued his attack on PLAINTIFF.

103.  ULRICH restrained PLAINTIFFs legs.

104.  ELBRICH restrained PLAINTIFF'S upper torso by placing his knee on PLAINTIFF'S neck.

105.  Once PLAINTIFF was in hand cuffs restrained MURPHY then forced PLAINTIFF up by his arms and slammed PLAINTIFF against a car.

106.  In the course of doing so MURPHY attempted to raised PLAINTIFFS hands while they were restrained by cuffs above his head.

107.  As a result of MURPHY'S violent act PLAINTIFF dislocated his shoulder and caused PLAINTIFF a significant amount of pain.

108.  CITY Officers then arrested and charged PLAINTIFF with alcohol intoxication in a public place, disorderly conduct, assault, resisting arrest and theft of identity.

109.  CITY police officers have a pattern, and practice of discriminating against African Americans and NADER knows of the practice and has failed to properly train and discipline officers.

110.  PLAINTIFF is recognizable as African American.

111.  CITY has multiple policies that require lawful procedures prior to search and de-escalation prior to the use of force but CITY and NADER only require such policies to be implemented when policing its white citizens.

**DAMAGES**

112.  PLAINTIFF was physically, mentally, and emotionally injured as a direct and proximate result of the brutal attack on his person, including but not limited to: physical injuries to his arm, growing, torso and face; and emotional damage resulting in a fear of government officials and post-traumatic stress related illnesses as a consequence of Defendants violations of his federal civil rights under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendment's.

113.  PLAINTIFF is entitled to recover damages pursuant to the pain and suffering he endured as a result of his civil rights being violated and the tortious acts by defendant's, inclusive.

114.  PLAINTIFF found it necessary to engage the services of private counsel to vindicate his rights under the law. PLAINTIFF is therefore entitled to an award of attorney's fees and/or costs pursuant to statute(s) in the event that they are the prevailing party in this action under 42 U.S.C. §§§§ 1983, 1985-86 and 1988.

## FIRST CAUSE OF ACTION

**(Violation of the Fourth Fifth and Fourteenth Amendment to the United States Constitution)**

**(42 U.S.C. § 1983)**

**(WYNN v. CITY, MURPHY, ULLRICH, ELSBERND)**

115.  PLAINTIFF re-alleges and incorporates by reference paragraphs 1 through 114 of this complaint.

116.  Defendants' above described conduct violates PLAINTIFF's right, as provided for under the Fourth Fifth and Fourteenth Amendment to the United States Constitution, to be free from excessive and/or arbitrary and/or unreasonable force against him.

117.  PLAINTIFF was forced to endure great pain and suffering because of the **CITY, MURPHY, ULLRICH,** and **ELSBERND'S** conduct.

118.  PLAINITIFF was  discriminated against in violation of the Constitution because the City,

Murphy, Ullrich, and Elsbernd administered police services in a discriminatory manner and used excessive force.

119.  Defendants acted under color of law by viciously beating PLAINTIFF without lawful justification and subjecting PLAINTIFF to excessive force thereby depriving PLAINTIFF of certain constitutionally protected rights, including, but not limited to:

   a.   The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

**(Monell Claim: 42 U.S.C. § 1983)**

**(WYNN v. CITY)**

120.  PLAINTIFF re-alleges and incorporates by reference paragraph's 1-114 of this Complaint.

121.  The CITY had a duty to adequately train, supervise and discipline their deputy officers in order to protect members of the public, including PLAINTIFF, from being harmed by police officers unnecessarily.

122.  The CITY was deliberately indifferent to such duties and thereby proximately caused injury to PLAINTIFF as complained herein. The CITY allowed its officers to implement policies that were unconstitutional on their face.

123.  PLAINTIFF is informed and believes the public inaction by the department has created an atmosphere in which officers believe they may act with impunity when engaging in unlawful conduct, as the CITY itself seems uninterested in complying with federal law.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION

**(Battery)**

**(WYNN v. CITY, MURPHY, ULLRICH, and ELSBERND)**

124.  PLAINTIFF re-alleges and incorporates by reference paragraph's 1-114 of this Complaint.

125.  The present action is brought pursuant to common law torts, as public employees, **MURPHY, ULLRICH, and ELSBERND** are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, **MURPHY, ULLRICH, and ELSBERND** were acting within the course and scope of their employment and/or agency with CITY. As such, Defendant CITY is liable in *respondeat superior* for the injuries caused by the acts and omissions of **MURPHY, ULLRICH, and ELSBERND**.

126.  CITY and **MURPHY, ULLRICH, and ELSBERND** perpetrated an intentional vicious physical attack on PLAINTIFF, and repeatedly battered him by forcefully striking him in the head, arms, and legs. **MURPHY, ULLRICH, and ELSBERND** the requisite intent to make physical contact and inflict pain and suffering on PLAINTIFF.

127.  PLAINTIFF has a right to be free from unwanted or unwarranted contact with his person and this right was violated by Defendants action or omissions, inclusive.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**

**(Assault)**

**(WYNN v. CITY, MURPHY, ULLRICH, and ELSBERND)**

128.  PLAINTIFF re-alleges and incorporates by reference paragraph's 1-114 of this Complaint.

129.  The present action is brought pursuant to common law torts, **MURPHY, ULLRICH, and ELSBERND** are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein **MURPHY, ULLRICH, and ELSBERND**

were acting within the course and scope of their employment and/or agency with CITY. As such, Defendant CITY is liable in *respondeat superior* for the injuries caused by the acts and omissions of DOES 1-50.

130. **MURPHY, ULLRICH, and ELSBERND** caused PLAINTIFF to fear that he was going to be beaten and possibly killed.

131. Defendants beat PLAINTIFF without cause. Defendants conduct was neither privileged nor justified under statute or common law.

132. As a result of Defendants acts, PLAINTIFF was in fact placed in great apprehension of imminent harmful and offensive contact with his person.

133. At no time did PLAINTIFF consent to any of the acts by the Defendants as alleged hereinabove.

134. Defendants conduct as described above caused PLAINTIFF to be apprehensive that Defendants would subject him to further intentional invasions of his right to be free from offensive and harmful contact and demonstrated that at all time's herein, Defendants had a present ability to subject him to an intentional offensive and harmful touching.

135. As a direct and proximate result of Defendants unlawful conduct as alleged hereinabove, PLAINTIFF has suffered physical injury, sever emotional distress, humiliation, embarrassment, mental and emotional distress, anxiety and economic harm.

136. PLAINTIFF has a right to be free from fear of unwanted or unwarranted contact with his person and his rights were violated by Defendants' action or omissions, inclusive.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

**(WYNN v. CITY, MURPHY, ULLRICH, and ELSBERND)**

137.  PLAINTIFF re-alleges and incorporates by reference paragraph's 1-114 of this Complaint.

138.  The present action is brought pursuant common law torts as public employees, **, MURPHY, ULLRICH, and ELSBERND** are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, **MURPHY, ULLRICH, and ELSBERND** were acting within the course and scope of their employment and/or agency with CITY. As such, Defendant CITY is liable in *respondeat superior* for the injuries caused by the acts and omissions of **MURPHY, ULLRICH, and ELSBERND** pursuant to common law torts.

139.  **MURPHY, ULLRICH, and ELSBERND** perpetrated a vicious physical attack on PLAINTIFF, repeatedly beating him. The Defendant's then, after the initial attack, conspired to inflict further emotional distress, beyond the beating, by threatening legal action against **PLAINTIFF** and make false claims against him.

140.  PLAINTIFF has a right to be free from such callous actions aimed at inflicting mental and emotional damage and this right was violated by said Defendants, inclusive.

WHEREOFRE, PLAINTIFF prays for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### (Negligence)

### (WYNN v. ALL DEFENDANTS)

141.  PLAINTIFF re-alleges and incorporates by reference paragraph's 1-114 of the Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton or oppressive conduct by defendants, and any and all allegations requesting punitive damages.

142.  In the alternative, PLAINTIFF alleges Defendant's negligent actions and/or negligent failure

to act within the scope and course of their employment with the CITY, as set forth hereinabove approximately caused severe physical injury to PLAINTIFF.

143.  The present action is brought pursuant to common law torts as public employees, **ALL DEFENDANTS** are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, **ALL DEFENDANTS** were acting within the course and scope of their employment and/or agency with CITY. As such, Defendant **CITY** is liable in *respondeat superior* for the injuries caused by the acts and omissions of **ALL DEFENDANTS**.

144.  As an actual and proximate result of said Defendants' negligence and physical injuries sustained by PLAINTIFF, PLAINTIFF has sustained pecuniary loss resulting from the loss of comfort, society, attention and services, in an amount to be determined at trial.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

### SEVENTH CAUSE OF ACTION

**(Negligent Infliction of Emotional Distress)**

**(WYNN v. CITY, MURPHY, ULLRICH, and ELSBERND)**

145.  PLAINTIFF re-alleges and incorporates by reference paragraph's 1-114 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton or oppressive conduct by defendants, and any and all allegations requesting punitive damages.

146.  In the alternative, PLAINTIFF alleges Defendants' negligent actions and/or negligent failure to act within the scope and course of their employment with the CITY, as set forth herein-above approximately cause severe physical injury and serious emotion distress to PLAINTIFF.

147.  The present action is brought pursuant to common law torts, as public employees, **CITY,**

**MURPHY, ULLRICH, and ELSBERND** are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, **CITY, MURPHY, ULLRICH, and ELSBERND** were acting within the course and scope of their employment and/or agency with CITY. As such, Defendant CITY is liable in *respondeat superior* for the injuries caused by the acts and omissions of DOES 1-50.

148.  Defendants' negligence was a substantial factor in causing PLAINTIFF serious emotional distress including both physical and emotional suffering, fright, nervousness, anxiety, worry, shock, humiliation, and shame.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

**(Negligent Hiring, Retention, Training, Supervision and Discipline)**

**(WYNN v. CITY )**

149.  PLAINTIFF incorporates the foregoing paragraphs by reference, as though fully reproduced herein, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton or oppressive conduct by defendants, and any and all allegations requesting punitive damages.

150.      PLAINTTIF claims that she was wrongfully confined and restrained at the scene of the incident and later detained by Defendants at the CITY jail.

151.      The Defendants intentionally deprived PLAINTIFF of her freedom of movement by use of physical barriers and threats of force, and unreasonable duress. The restraint confinement and dentition of Plaintiff.

152.      The Defendants conduct was a substantial factor in causing the PLAINTTIF harm.

## NINTH CAUSE OF ACTION

**(Supervisor Liability- 42 U.S.C. § 1983)**

**(WYNN v. NADER)**

153.  PLAINTIFF incorporates the foregoing paragraphs by reference, as though fully reproduced herein, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton or oppressive conduct by defendants, and any and all allegations requesting punitive damages.

154.      **NADER** was employed by CITY as Chief for the Covington Police Department.

155.      At all relevant times **NADER** was responsible for hiring, transfer, suspension, promotion, discharge, assignment, reward or discipline of other department members, and directing the work of other members.

156.      At all relevant times **NADER** was under an oath as a law enforcement officer to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice.

157.      **NADER** was personally involved in the constitutional deprivation of PLAINTIFF's constitutional rights by participating in the act of covering up evidence and not properly preserving phone text messages and witness statements in an attempt to criminally charge PLAINTIFF with acts of domestic violence.

158.      **NADER**  was personally involved in a sufficient casual connection of PLAINTIFF's constitutional rights by their approval of fabricated and factious police incident reports.

159.      **NADER** was reckless and had a callous indifference for the rights of PLAINTIFF.

160.      **NADER** acts directly caused PLAINTIFF harm.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.


## **JURY DEMAND**

161. **PLAINTIFF hereby demands a jury trial**.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for relief, as follows:

For general damages in a sum according to proof;

For special damages, including but not limited to, past, present and/or future wage loss, medical expenses and other special damages to be determined according to proof;

For punitive and exemplary damages against each defendant in a sum according to proof;

Any and all permissible statutory damages;

For costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and U.S.C. § 794(a);

For all other relief to which the Court deems just and proper.


**Dated: November 1, 2021**                                    /S/Jamir Davis _____

                                                          Attorney for Plaintiff