**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 21-137-DLB-CJS**

**ANTHONY MARIO WYNN**                                                    **PLAINTIFF**

**v.**                    **MEMORANDUM OPINION AND ORDER**

**CITY OF COVINGTON, et al.**                                            **DEFENDANTS**

**\*\*\* \*\*\* \*\*\* \*\*\***

Defendants City of Covington; Robert Nader, individually and in his official capacity as Chief of the Covington Police Department; Doug Ullrich, John Murphy, and Danny Elsbernd, individually and in their official capacities as police officers for the City of Covington, have filed a Motion for Partial Dismissal. (Doc. # 14). Plaintiff Anthony Mario Wynn has filed his Response (Doc. # 17) and Defendants have filed their Reply (Doc. # 20). This matter is now ripe for review. For the reasons stated below, Defendants' Motion for Partial Dismissal is **granted**.

**I.     FACTUAL BACKGROUND**

Wynn alleges that on the night of August 28, 2020, a City of Covington police car pulled him over and an unknown officer instructed him to exit the vehicle. (Doc. # 1 ¶¶ 27-32, 35).[1] Defendant Officer Ullrich arrived in the second car on the scene and allegedly directed the unknown officer to force Wynn out of the vehicle. (*Id.* ¶ 39). Wynn further alleges that Ullrich then claimed that he smelled marijuana in the vehicle and

---

[1]     Because Defendants' Motion only relates to Wynn's claims based on events that took place on August 28, 2020, the Court will focus on those allegations.

demanded Wynn's removal from the vehicle.  (*Id.* ¶ 41).  The unknown officer removed Wynn from the vehicle, and with the assistance of Ullrich, placed Wynn in handcuffs.  (*Id.* ¶¶ 43-44).  After the unknown officer and Ullrich searched through Wynn's pockets and found nothing, they demanded that Wynn consent to a second more thorough search and Wynn refused.  (*Id.* ¶¶ 47-50).  According to Wynn, the unknown officer and Ullrich then "aggressively forced a second search of his person," after another named Defendant, Officer Elsbernd, arrived and helped subdue Wynn.  (*Id.* ¶¶ 51-52).  Wynn alleges that the officers then slammed him against a police vehicle, searched him, attacked him with punches and kicks, and that he became unconscious.  (*Id.* ¶¶ 53-57).

Wynn further alleges that he awoke face down with his pants down and underwear cut off and the officers claiming they had found drugs in his underwear and pockets.  (*Id.* ¶¶ 58-60).  As a result of this incident, Wynn alleges that he suffered "a torn ligament in his shoulder, hernia in his [groin], and severely injured [wrists] along with other bruises and scrap[e]s on his face," as well as blood in his urine for weeks.  (*Id.* ¶¶ 61-62).  Wynn states his injuries went untreated, despite his complaints, while he was detained in Kenton County Detention Center for forty days.  (*Id.* ¶¶ 65-66).  Lastly, Wynn claims that Ullrich stated in official documents that he activated his body worn camera ("BWC") during the incident, but that Defendants claim the video of the incident no longer exists.  (*Id.* ¶¶ 63-64).  Wynn brings nine claims against Defendants including 42 U.S.C. § 1983 claims for violations of his constitutional rights as well as state law tort claims arising from the multiple arrests discussed in the Complaint.  (*Id.* ¶¶ 115-160).  Defendants argue that the claims related to August 28, 2020 are time-barred by the relevant statute of limitations. (Doc. # 14 at 5-7).

II.     **ANALYSIS**

A.     **Standard of Review**

Granting a motion to dismiss is appropriate if a plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Further, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In order to have "facial plausibility," the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

In evaluating a motion to dismiss, a court should "construe the complaint in the light most favorable to the plaintiff" and "accept all well-pleaded factual allegations as true."  *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570).  However, "mere conclusory statements[], do not suffice" and legal conclusions "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 678-79.

Although the statute of limitations is normally raised in a motion for summary judgment, rather than a motion to dismiss, a court may dismiss if the limitations bar is evident from the face of the complaint.  *See Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014); *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992); *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2012).  The defendant bears the burden to show that the statute of limitations has run, after which the burden shifts to the plaintiff to establish an exception to the statute of limitations.  *Lutz*, 717 F.3d at 464 (internal quotation marks and citations omitted).

**B.      Statute of Limitations**

Section 1983 claims generally borrow the personal-injury statute of limitations from the state in which the claim arose.  *Zappone v. United States*, 870 F.3d 551, 559 (6th Cir. 2017).  Accordingly, Kentucky's one-year statute of limitations governs § 1983 actions. *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 183 (6th Cir. 1990); *4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 817 (E.D. Ky. 2019); *Jones v. Louisville/Jefferson Cnty. Metro Gov't*, 482 F. Supp. 3d 584, 591 (W.D. Ky. 2020); Ky. Rev. Stat. § 413.140(1)(a).  While state law determines which statute of limitations controls, federal law determines when the statute of limitations begins to run.  *Ruff v. Runyon*, 258 F.3d 498, 500-01 (6th Cir. 2001) (citations omitted); *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.").  The Sixth Circuit has relied on the "discovery rule," which is that "the limitations period starts to run 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'"  *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)).  There is some tension as to whether that rule still applies in light of recent Supreme Court precedent indicating that the limitations period begins "when the plaintiff has a complete and present cause of action."  *Dibrell v. Cty. of Knoxville, Tenn.*, 984 F.3d 1156, 1162 (6th Cir. 2021) (quoting *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019)).  However, under either standard, Wynn's claims are time-barred by the statute of limitations.

Under the discovery rule, a plaintiff has reason to know of the injury which is the basis of his action when an event occurs that "should have alerted the typical lay person

to protect his or her rights." *Kuhnle Bros.*, 103 F.3d at 520 (citing *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  *Ruff*, 258 F.3d at 501 (quoting *Sevier*, 742 F.3d at 273).  However, under the "complete and present cause of action" standard, false arrest claims begin to accrue upon the date either the false imprisonment ends with the person's release or with the issuance of legal process. *Dibrell*, 984 F.3d at 1162.

Defendants argue that the one-year statute of limitations bars some of Wynn's claims because the face of the Complaint makes clear that some of Wynn's claims occurred, and began to accrue, on August 28, 2020, whereas the Complaint was not filed until November 1, 2021.  (Doc. # 14 at 5).  The Court finds that, under the discovery rule, Wynn would have known of his alleged injuries in August 2020.  (Doc. # 1 ¶¶ 27-66). Indeed, Wynn even admits that he "complained of his injuries" while he was detained immediately after the incident and that he was in custody for forty days.  (*Id.* ¶¶ 65-66). Under the discovery rule, Wynn was aware of the basis of his alleged injuries at the time of the incident and should have known of his cause of action, so the statute of limitations began to run in August 2020.

In the alternative, Wynn would have had a "complete and present cause of action" at the latest, upon his release, which was forty days after August 28, 2020, or October 7, 2020.  *Dibrell*, 984 F.3d at 1162; *Murray v. Jones*, No. 6:20-CV-82, 2022 WL 821662, at *3-*5 (E.D. Ky. Mar. 17, 2022) (holding that defendant's false arrest claim accrued "giving [defendant] the benefit of every conceivable doubt, no later than the day he was released from the hospital.").  Under this standard, the statute of limitations began to accrue on

5

October 7, 2020, and therefore the one-year period expired on October 7, 2021.  The Court holds that the face of the Complaint, filed in November of 2021, makes clear that Wynn's claims related to August 28, 2020 are barred by the relevant statute of limitations.

### C.   Exceptions to the Statute of Limitations

Because Defendants have proven that the statute of limitations has run as to Wynn's claims related to August 28, 2020, the burden now shifts to Wynn to prove that an exception applies to the statute of limitations.  *Lutz*, 717 F.3d at 464.  Wynn argues that the statute of limitations does not bar his claims because it was equitably tolled for the following reasons: (1) he could not commence his suit because he did not know the identities of all of the officers involved; (2) he did not know of his injuries on August 28, 2020 because he was knocked unconscious during the incident; and (3) he did not know the extent of the constitutional violations that occurred because Defendants informed him that BWC footage was unavailable.  (Doc. # 17 at 4-7).[2]

While equitable tolling is a possibility, it "is a rare remedy to be applied in unusual circumstances."  *Wallace*, 549 U.S. at 396.  The party requesting tolling bears the burden of proof.  *See McCord v. Bd. of Educ. of Fleming Cty.*, No. 17-5548, 2018 WL 1724560, at * 4 (6th Cir. 2018).  In § 1983 actions, the law of the state where the federal court sits applies unless the state's law is "inconsistent with federal policy underlying section

---

[2]    Wynn does not cite to specific exceptions to the statute of limitations to support his first two arguments; instead he makes arguments under the discovery rule.  (Doc. # 17 at 4-6).  The Court assumes he is making a general argument under Kentucky precedent that allows equitable tolling "in limited circumstances where a plaintiff was diligent in pursuing his rights but factors beyond his control prevented the action from being commenced within the limitation period."  *4th Leaf*, 425 F. Supp. 3d at 820.  His third argument relies on the well-recognized fraudulent concealment exception to the statute of limitations under the doctrine of equitable estoppel.  (Doc. # 17 at 7).

1983." *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986) (citing *Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 484–85 (1980)).  Because Kentucky's tolling laws are consistent with the federal policy underlying § 1983, Kentucky's tolling laws apply here.  *4th Leaf*, 425 F. Supp. 3d at 820.

### 1.     *Unknown Officers*

Wynn argues that "Defendants cannot prove that Plaintiff knew the names of the individual [o]fficers named on August 28, 2020."  (Doc. # 17 at 5).   However, nothing prevented Wynn from learning the unknown officers' names and he must show that he was diligent in obtaining that information.  Just like the Plaintiff in *Murray*, Wynn has failed to show that he "attempted to obtain a copy of the police citation . . . [and] does not state that he contacted the [police] in an effort to learn the names of the officers but was refused."  2022 WL 821662, at *5.  As the *Murray* court made clear, "[d]iligence does not require a herculean effort to file suit in the face of insurmountable odds.  But it does require far more than the mere hope that any difficulties encountered in filing a complaint will dissipate without effort by the plaintiff or will be resolved by others on his behalf."  *Id.*  Indeed, Wynn argues that he did not ascertain the names of the unknown officers until "formal discovery had commenced" and he obtained police reports about the incident, but did he try to inquire about those reports or ascertain the identity of the officers earlier? (Doc. # 17 at 5).  He does not state that he did, nor does he state any reason for not doing so.  (*Id.*).[3]  Accordingly, "the usual rule applies" and the "statute of limitations is not tolled

---

[3]      Moreover, Wynn acknowledged in the Complaint that he did not know the names of several defendants and therefore sued under fictitious names while reserving the right to amend his Complaint subject to further discovery.  (Doc. # 1 ¶ 25).  This undercuts Wynn's argument because he could have made this same assertion earlier than the date the Complaint was filed and relied on discovery to provide the names of unidentified defendants, which he ultimately did anyway.

while [Wynn] attempts to identify the correct defendants."  *Murray*, 2022 WL 821662, at

*5 (citing *Dowdy v. Prison Health Servs.*, 21 F. App'x 433, 435 (6th Cir. 2001)).

### 2.    *Lack of Knowledge*

Wynn's argument that he did not know of his injuries because he was not

conscious during the entire attack is also unavailing.  (Doc. # 17 at 5-6).  Wynn asserts

that he was unaware of his injuries and who caused them until weeks after the incident

due to loss of memory and delayed medical treatment.  (*Id.* at 6).  However, Wynn's

allegations in the Complaint contradict this assertion.  Wynn was allegedly pulled over,

searched multiple times, and handcuffed well before he was struck and knocked

unconscious.  (Doc. # 1 ¶¶ 28-55).  When Wynn awoke from being unconscious, he

noticed that officers had undressed him and eventually jailed him. (*Id.* ¶¶ 57-65).  Lastly,

Wynn alleges he experienced blood in his urine for weeks and complained about his

injuries *while detained*.  (*Id.* ¶¶ 62, 65-66).  The events prior to Wynn being knocked

unconscious, along with his subsequent arrest, would alert him to at least *some*

altercation with the police.  Therefore, Wynn's arguments about his lack of knowledge do

not prove that the statute of limitations was tolled.[4]

### 3.    *Fraudulent Concealment and Equitable Estoppel*

Lastly, Wynn argues that the doctrine of equitable estoppel applies to his claims

and tolled the statute of limitations because Defendants fraudulently concealed evidence;

specifically, BWC footage of the August 28, 2020 incident.  (Doc. # 17 at 4).  Under KRS

413.190(2), the statute of limitations is tolled when a defendant "obstructs the prosecution

---

[4]    Even if the statute of limitations was tolled until Wynn was released, based on this argument, it still would not have been tolled long enough to save Wynn's August 28, 2020 claims. *See supra* Section II.B.

of the action."  Indeed, the Sixth Circuit has recognized that false representation and false concealment are grounds to toll a statute of limitations under Kentucky law.  *Newberry v. Serv. Experts Heating & Air Conditioning, LLC*, 806 F. App'x 348, 359 (6th Cir. 2020) (citations omitted).

For the fraudulent concealment exception to apply, Wynn must show "(1) that [he] lacked the means of acquiring knowledge of the truth about [Defendants'] misconduct, (2) that [he] reasonably relied on [Defendants'] misrepresentations, and (3) that [he] failed to timely sue because of these misrepresentations."  *Id.* (cleaned up).  Kentucky decisions "appear to require some act or conduct which in point of fact misleads or deceives plaintiff and obstructs or prevents him from instituting his suit while he may do so."  *Id.* (internal quotation marks and citations omitted).  Additionally, there is no fraudulent concealment if the plaintiff is aware of facts that should have aroused his suspicion of the claims against the defendants at the time of his injuries.  *Gilley v. Dunaway*, 572 F. App'x 303, 309 (6th Cir. 2014).  "Even under this exception, the limitations period still starts to run once the plaintiff 'should have discovered' his injury.'"  *Chunn v. Se. Logistics, Inc.*, 794 F. App'x 475, 477 (6th Cir. 2019) (citation omitted).

Wynn asserts that he "was not put on notice that BWC footage was unavailable until January of 2021."  (Doc. # 17 at 6-7).  He points to the police incident report that indicated BWCs were activated during the altercation to bolster the inconsistency.  (*Id.* at 6).  He reasons that this amounts to fraudulent concealment because "Defendants' acts of delaying release of relevant information have prevented Plaintiff from gathering enough facts to properly pursue his claims."  (*Id.* at 7).  Defendants counter that BWC footage is not stored in perpetuity and is often lost or deleted to accommodate limited storage

capacity.  (Doc. # 20 at 3-4).  While Defendants' argument consists of unsupported generalizations, Wynn is still wrong that this amounts to fraudulent concealment for several reasons.

First, Wynn has not shown that he lacked the means of acquiring the truth about Defendants' misconduct.  *Newberry*, 806 F. App'x at 359.  In *Newberry*, the Sixth Circuit reasoned that "although plaintiffs assert that they lacked knowledge of the water contamination as a result of [defendant's] fraudulent statements, they do not allege that they *lacked the means of acquiring* this knowledge."  *Id.* (emphasis added).  Likewise, Wynn has alleged that Defendants' statements about BWC footage were inconsistent, but not that he lacked the means of discovering knowledge about the alleged constitutional violations.  (Doc. # 17 at 6-7).  Wynn does not allege that he was prevented from inquiring about or accessing information related to the incident.  While he does claim that he was only allowed to review evidence once discovery had commenced, this Court has yet to issue a scheduling order planning any discovery.  (*Id.* at 6).  Therefore, it seems that Wynn was able to obtain information related to the incident and he did not lack the means of acquiring knowledge of Defendants' alleged misconduct.

Second, Wynn cannot show that he reasonably relied on Defendants' misrepresentations and that he failed to timely sue because of that reliance.  *Newberry*, 806 F. App'x at 359.  The only alleged misrepresentation that Wynn points to is that the police incident report indicated that BWCs were activated during the altercation while the Covington Police Department later told Wynn that the footage was unavailable.  (Doc. # 17 at 6).  However, he claims that he did not have notice of the unavailability of the BWC footage until *January* 2021, but the Complaint was filed in *November* 2021.  (Docs. # 1

and 17 at 6). Why did Wynn wait until November to file his Complaint when he was informed ten months prior that the BWC footage was unavailable? Even if the evidence was fraudulently concealed, such concealment would not have prevented him from initiating his lawsuit.

Third, Wynn has failed to show "some act or conduct which in point of fact misleads or deceives plaintiff and obstructs or prevents him from instituting his suit while he may do so." *Newberry*, 806 F. App'x at 359 (internal quotation marks and citations omitted). At most, he has alleged that the incident report indicated the incident was reported by BWCs and that Defendants later told Wynn that footage was unavailable. But, as discussed above, this did not prevent him from instituting his lawsuit. The Court is also skeptical that this allegation rises to the level of misleading or deceiving Wynn. The incident report was not created to give Wynn notice of the availability of BWC footage; rather, the report and footage document the event.

Last but not least, Wynn was aware of facts that should have aroused his suspicion of the claims he had against Defendants at the time of his injuries, the BWC footage was not a necessity. *See Gilley*, 572 F. App'x at 309. As discussed in Section II.B, Wynn was aware of the misconduct immediately after the interaction took place, so the fraudulent concealment exception does not apply to the facts at hand. *Id.*

For all these reasons, the statute of limitations was not tolled, Wynn's Complaint filed on November 1, 2021 is untimely, and the one-year statute of limitations bars his claims as they relate to any causes of action arising out of the events of August 28, 2020.

Accordingly, it is **ORDERED** that:

(1)     Defendants' Motion for Partial Dismissal (Doc. # 14) is **GRANTED**;

(2)     Plaintiff's claims related to August 28, 2020 are **DISMISSED WITH PREJUDICE**; and

(3)     The parties shall file a Federal Rule of Civil Procedure 26(f) joint report with proposed scheduling deadlines related to the remaining claims within **thirty (30) days** from entry of this Order.

This 20th day of September, 2022.

Signed By:

_**David L. Bunning**_     _DB_

**United States District Judge**

K:\DATA\ORDERS\Cov2021\21-137 MOO Granting MTD.docx