**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

CIVIL ACTION NO. 21-137-DLB-CJS

ANTHONY MARIO WYNN                                              PLAINTIFF


v.                    <u>MEMORANDUM OPINION AND ORDER</u>


CITY OF COVINGTON, et al.                                     DEFENDANTS


* * * * * * * * * * * * * * * *

### I.    INTRODUCTION

This matter is before the Court upon two Motions: (1) Defendants City of Covington; Robert Nader, individually and in his official capacity as Chief of the Covington Police Department; Douglas Ullrich, John Murphy, and Danny Elsbernd, individually and in their official capacities as police officers for the city of Covington (collectively "Defendants")'s Motion for an Award of Attorney's Fees (Doc. # 89) and (2) the American Civil Liberty Union's ("ACLU") Motion for Leave to File *Amicus Curiae* Brief (Doc. # 93). The Motions have been fully briefed, or the time to do so has passed, and are ripe for review.  For the following reasons, Defendants' Motion for Attorney's Fees is **granted in part and denied in part** and the ACLU's Motion for Leave is **denied**.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

The Court will not restate in detail the relevant facts, as they were fully set forth in the Memorandum Opinion and Order entered in this action on August 16, 2024.  (*See* Doc. # 84).  Summarized, this matter stems from three separate arrests of

1

Plaintiff by officers at the Covington Police Department that occurred from August 2020 to January 2021. (*Id.* at 1).

On November 1, 2021, Plaintiff initiated this action by filing his Complaint, asserting constitutional violations and related tort claims against all Defendants for their conduct in three separate arrests of his person on August 28, 2020, January 1, 2021, and January 16, 2021. (*See generally* Doc. # 1). Upon service of the Complaint and filing an Answer (Doc. # 13), Defendants filed a Motion for Partial Dismissal, arguing that the claims related to the August 28, 2020 arrest should be dismissed because they were outside the statute of limitations. (Doc. # 14). The Court agreed and granted the Motion on September 20, 2022, dismissing the claims stemming from the August 28, 2020 arrest with prejudice. (Doc. # 21).

The parties then proceeded to discovery on the remaining claims. On April 14, 2023, Defendants moved for partial summary judgment, on the grounds that Ullrich, Murphy, and Elsbernd were not present at the January 1, 2021, arrest and were therefore not liable for any of Plaintiff's presented claims. (Doc. # 26 at 8). The parties subsequently agreed, at multiple intervals, to extend the response and reply deadlines for the partial Motion for summary judgment, as well as additional discovery extensions. (*See* Docs. # 29, 34, 41, 44, and 49). Eventually, this Court administratively denied the partial Motion for summary judgment, reasoning that given the length of time the Motion was pending and the multiple extensions of the briefing deadlines, the proposed extension would closely coincide with the dispositive motion deadline set by the Scheduling Order. (Doc. # 50 at 2). The parties received two more extensions of the

discovery deadlines (*see* Docs. # 50 and 52) before Defendants filed a Motion for summary judgment on April 15, 2024 (Doc. # 56).

Following Defendant's Motion for summary judgment (Doc. # 56), Plaintiff filed a Motion to Mediate with a judicial officer pursuant to Local Rule 16.2.  (Doc. # 61). Defendants responded in opposition (Doc. # 66), and Magistrate Judge Smith denied the Motion without prejudice.  (Doc. # 67).  This Court then took up the Motion for summary judgment.  The Court issued its Memorandum Opinion and Order (Doc. # 84) on August 16, 2024, granting Defendants' Motion together with a corresponding Judgment (Doc. # 85).

On September 13th, 2024, Defendants filed the instant Motion wherein they request attorney's fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927 (Doc. # 89 at 1).  On October 11th, 2024, the ACLU of Kentucky filed a Motion for Leave to File an *Amicus Curiae* Brief.  (Doc. # 93).

III.    **ANALYSIS**

   A.    **Motion for Leave to file Amicus Curiae Motion.**

On October 11, 2024, the ACLU filed a Motion for Leave to file an *Amicus Curiae* Brief (Doc. # 93) in the present case.  Defendants filed a response in opposition to the Motion (Doc. # 96).  In their Response, Defendants argue that the ACLU's motion is not useful to this Court because it "does not address a legal issue about which there is some doubt, does not provide impartial information . . . and does not offer any unique perspective."  (*Id*. at 6).  The ACLU did not file a Reply.

Participation as an amicus is "a privilege within the sound discretion of the courts, depending upon a finding that the proffered information of amicus is timely, useful, or

otherwise necessary to the administration of justice." *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991) (internal citations and quotations omitted). The role of an amicus is generally "'to aid the Court in resolving doubtful issues of law rather than present a partisan view of the facts.'" *BancInsure, Inc. v. U.K. Bancorporation Inc./United Kentucky Bank of Pendleton Cnty., Inc.*, 830 F.Supp.2d 294, 307 (E.D. Ky. Nov. 16, 2011) (quoting *Dow Chemical Co. v. United States*, No. 00-cv-10331, 2002 WL 33012185, at *1 (E.D. Mich. May 24, 2002)); *see also* 16AA C. Wright & A. Miller, Federal Practice and Procedure § 3975, p. 313 (2008) ("[A]n amicus ought to add something distinctive to the presentation of the issues, rather than serving as a mere conduit for the views of one of the parties.").

In describing the role of an amicus curiae, the Sixth Circuit has stated:

> Historically, "amicus curiae" was defined as one who interposes "in a judicial proceeding to assist the court by giving information, or otherwise, or who conduct[s] an investigation or other proceeding on request or appointment therefor by the court." Its purpose was to provide *impartial* information on matters of law about which there was doubt, especially in matters of public interest. The orthodox view of amicus curiae was, and is, that of an *impartial* friend of the court-*not an adversary party in interest in the litigation*.

*United States v. Michigan,* 940 F.2d 143, 164-165 (6th Cir. 1991) (emphasis in the original) (internal citations omitted).

Rather than a "friend of the Court," the ACLU's arguments here are more closely aligned with Plaintiff and are advocating the same positions briefed by Plaintiff. (*Compare* Doc. # 93 at 5 ("While Defendants are technically correct that *Hiibel* permits a police officer 'to ask a vehicle's passenger to identify himself' . . . *Hiibel* does not give law enforcement unfettered authority to do so.") *with* Doc. # 95 at 8 ("While *Hiibel* [] established that a police officer may ask a vehicle's passenger to identify themselves, this

decision is not without nuance."); *see also* Doc. # 93 at 12 ("Defendants Motion for Award of Attorneys' Fees should be denied.")).  The ACLU's presence as amicus herein would simply not provide unique information or perspective that would assist the Court beyond the help that the lawyers for the parties are able to provide.

Although the ACLU proposes to aid this Court in parsing the various strains of attorney's fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927, such aid is not required.  The law in this area is well-settled, and this Court needs no additional help identifying those cases which will determine the outcome of the pending motion.  For these reasons, the Court finds that the proposed amicus brief will not aid the Court in resolving the issues before it and there is no need to add to the arguments already made by the parties.  Accordingly, the ACLU's Motion for Leave to File an *Amicus Curiae* Brief is **denied**.

### B.    Attorney's Fees Pursuant to 42 U.S.C § 1988

Defendants argue they are entitled to attorney's fees pursuant to 42 U.S.C § 1988 because Plaintiff's claims were frivolous, unreasonable, and groundless.  (Doc. # 89 at 6).    Plaintiff disagrees, arguing that "Defendants' request for attorney's fees [] is unfounded under the applicable legal standard."  (Doc. # 95 at 4).

The standard for an award of attorney's fees in a § 1983 action is well established. A district court, in its discretion, may "allow the prevailing party, [] reasonable attorney's fees as part of the costs . . . ."  42 U.S.C. § 1988.  Pursuant to this statute, a prevailing plaintiff is entitled to attorney's fees "in all but special circumstances."  *Smith v. Smythe-Cramer Co*., 754 F.2d 180, 182 (6th Cir. 1985).  Prevailing defendants, however, are entitled to such fees "much less frequently."  *Id*.; *see also Kidis v. Reid*, 976 F.3d 708,

5

722 (6th Cir. 2020) ("Prevailing § 1983 defendants face a higher bar than their prevailing plaintiff counterparts").   Because issuing attorney's fees against a losing civil-rights plaintiff is an "extreme sanction," such an award "must be limited to truly egregious cases of misconduct."  *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986).  Such fees should not be assessed against a civil-rights plaintiff unless the action is "frivolous, unreasonable, or groundless, or the plaintiff continued to litigate it after it clearly became so."[1] *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *see also id*. ("And, needless to say, if a plaintiff is found to have brought or continued a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.") (emphasis in the original).

Application of the *Christiansburg* standard "requires examining a plaintiff's basis for filing suit, and awards to prevailing defendants depend on the factual circumstances of each case."  *Bagi v. City of Parma, Ohio*, 795 Fed. Appx. 338, 343 (6th Cir. 2019) (citing *Smith*, 754 F.2d at 183 (6th Cir. 1985)).   The *Christiansburg* court stressed that in analyzing an award for attorney's fees to prevailing defendants, "a district court must resist the urge to engage in 'post hoc reasoning' and the 'hindsight logic' of concluding a suit is without foundation because the plaintiff ultimately does not prevail."  *Smith*, 754 F.2d at 183 (quoting *Christiansburg*, 434 U.S. at 421-22).   Such hindsight logic "could discourage all but the most airtight claims."  *Id*.; s*ee also Shelton v. City of Taylor*, 92 Fed. Appx. 178, 185 (6th Cir. 2004) ("[C]ourts are reluctant to award fees to defendants for fear of chilling willingness to bring legitimate civil rights claims.").

---

[1]    *Christiansburg* considered attorney's fees arising from a Title VII claim.  However, the Supreme Court in *Hughes v. Rowe* later held that the stringent *Christiansburg* standard applies to § 1983 claims as well.  449 U.S. 5, 14 (1980).

Here, Defendants allege they are entitled to attorney's fees on each of Plaintiff's claims as they relate to each of his three arrests. The Court will address the potential award of attorney's fees as it relates to each claim separately.

### 1. August 28, 2020 arrest

Defendants first argue they are entitled to an award of attorney's fees in connection with the August 28, 2020 arrest claim. (Doc. # 89 at 6). Specifically, Defendants allege that because § 1983 claims are subject to a clear one-year statute of limitations, the August 28, 2020 claims were unreasonable or groundless "because their failure was clearly apparent from the beginning." (*Id.*). In the alternative, Defendants argue that even if Plaintiff did not realize the claims were time-barred at the outset, once Defendants filed their Motion for partial dismissal, Plaintiff should have withdrawn the claims, entitling Defendants to attorney's fees incurred in preparation of their Reply memorandum. (Doc. # 89 at 7). Plaintiff disagrees, arguing that the claims were not unreasonable or groundless because he had a "legitimate basis to believe that [the equitable tolling doctrine] could apply under the circumstances." (Doc. # 97 at 4-5).

In their Motion for partial dismissal, Defendants argued that the August 28, 2020 claim was barred by the statute of limitations. (Doc. # 14). Plaintiff argued that the statute of limitations did not bar the August 28, 2020 claim because the claim was equitably tolled. (Doc. # 17 at 4). Specifically, Plaintiff made general equitable tolling arguments, in addition to arguing the fraudulent concealment exception under the doctrine of equitable estoppel. (Doc. # 17 at 4-7). While the Court ultimately rejected Plaintiff's equitable tolling arguments, the mere fact that the Plaintiff's argument was unsuccessful does not mean the claim was frivolous. Such a finding would be the exact type of "post hoc reasoning"

the *Christiansburg* court warned against.  *See Christiansburg*, 449 U.S. at 14 ("The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees.").

Here, the Court has no reason to believe that Plaintiff's August 28, 2020 claim was frivolous, meritless, or unreasonable at the outset.  In an unpublished Sixth Circuit decision, that court plainly stated that "merely 'asserting a time-barred claim alone does not justify an award of attorney's fees.'" *Duncan v. Village of Middlefield*, 1994 WL 269578, No. 93-3818 (6th Cir. 1994) (quoting *Hoover v. Armco, Inc*., 915 F.2d 355, 357 (8th Cir.)).  Specifically, the Sixth Circuit noted that because the statute of limitations is an affirmative defense, a plaintiff "is not required to anticipate that a defendant would raise it" and thus a district court does not err in concluding that a claim is non-frivolous even if time-barred.  *Id*.  Moreover, this Court has no reason to believe that even after the filing of Defendants' Motion, Plaintiff acted in such a truly egregious manner as to warrant attorney's fees.

While the Court, in rejecting Plaintiff's equitable tolling argument, reiterated that a successful equitable tolling argument is rare, it nonetheless recognized that equitable tolling is "certainly an argument."  (Doc. # 21).  Therefore, the sole fact that the success rate of an equitable tolling argument is rare does not mean that the Plaintiff did not have reasonable grounds for continuing to defend the August 28, 2020, claims.  *See Wershe v. City of Detroit, Michigan*, No. 23-1902, 2024 WL 3729101, at *1 (6th Cir. 2024) (finding that the plaintiff's appeal was not frivolous, despite the court finding that the equitable tolling argument lacked merit.).  While not binding on this Court, other federal courts in the country have similarly held that a time-barred civil rights claim is not inherently

8

frivolous. *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 240 (E.D. N.Y. Jan. 28, 2015) (holding that a time-barred § 1988 claim was not frivolous and did not warrant attorney fees because while incorrect, the plaintiff's "erroneous assumptions [did] not rise to the level to warrant an award of attorneys' fees against him under Section 1988"); *Milestone Academy v. Douglas County School District*, No. 20-cv-02927, 2023 WL 2479947, at *2 (D. Co. Mar. 13, 2023) (denying defendant's motion for attorney fees because the plaintiff's equitable tolling argument for the 1983 claim was not "indisputably meritless."); *Brown v. Napa Valley Unified School Dist.*, No. 3:11-cv-05673, 2012 WL 4363673, at *9 (N.D. Ca. Sept. 24, 2012) ("Although the Court rejects Plaintiffs' [equitable tolling theory], the Court cannot say Plaintiffs did not present them with reasonable cause.").

Additionally, with respect to the fraudulent concealment exception, this Court noted that the Sixth Circuit has recognized that false concealment is grounds to toll a statute of limitations under Kentucky law. (Doc. # 21 at 9). While this Court ultimately rejected Plaintiff's fraudulent concealment argument, filing a time-barred claim with an honest reliance on a valid and recognized exception does not rise to the level of "truly egregious" required for attorney's fees. Therefore, Defendants' Motion for attorney's fees on Plaintiff's August 28, 2020 claim is **denied**.

### 2. January 1, 2021 arrest

Defendants next argue that they are entitled to attorney's fees on the January 1, 2021 claim because Plaintiff "never had any factual basis for believing that Officers Ullrich, Elsbernd or Murphy were present during his January 1, 2021 arrest." (Doc. # 89 at 8). Plaintiff, in turn, argues that the claim was not frivolous at the outset because "[a]t

the time of filing, Plaintiff did not have access to the full records of the event[.]"  (Doc. # 95 at 5).

Defendants originally filed a partial motion for summary judgment in April 2023, requesting this Court grant summary judgment solely on the January 1, 2021 claim.  (Doc. # 26 at 1).  Defendants argued that because Defendants Ullrich, Murphy, and Elsbernd were not present on January 1, 2021, they could not be held liable for any alleged constitutional violations.  (*Id*. at 8).  In support of their Motion, Defendants submitted: (1) a call for service detail report listing which units were dispatched to the scene; (2) Officer Griswold's body worn camera video footage; (3) Officer Durairaj's body worn camera video footage; and (4) Officer Krieger's body worn camera video footage.  (Docs. # 26-1, 26-2, 26-3, and 26-4).  After numerous discovery extensions, this Court administratively denied the Motion (Doc. # 50).

Following the conclusion of discovery, Defendants filed a Motion for summary judgment (Doc. # 56).  In their Motion, Defendants renewed the argument that they were entitled to summary judgment on the January 1, 2021 claim because Defendants Ullrich, Murphy, and Elsbernd were not present.  (*See* Doc. # 56 at 4) ("None of the individual Defendants participated in any way in the arrest; in fact, none of them were present – or even working – when the arrest occurred.").  In support of their Motion, Defendants referenced the same exact evidence that had been submitted with their Motion for partial summary judgment.  Defendants additionally submitted a uniform citation from the arrest which detailed the events of the arrest (Doc. # 56-1) and a daily lineup which listed which Officers were scheduled to work that day (Doc. # 56-2).  Defendants argued that the submitted evidence demonstrated that Defendants Ullrich, Murphy, and Elsbernd were

not present during the arrest, and therefore were entitled to summary judgment on that claim. (Doc. # 56 at 6). Specifically, Defendants noted that: (1) the call for service reports identified which police officers responded to the apartment complex; (2) the uniform citation listed which officers were witnesses to the arrest, of which Defendants Ullrich, Murphy, and Elsbernd were not listed; (3) the daily lineup indicated that Defendants were not scheduled to work that day; and (4) the three separate body camera footages showed that Defendants were not present on the scene at any point during the January 1, 2021 events. (Doc. # 56 at 6-8).

In this Court's Memorandum Opinion and Order, it granted summary judgment to Defendants on all claims. With respect to the January 1, 2021 claim, the Court acknowledged that "Defendants painstakingly detail[ed] each timestamp where the present officers are identified, and rule[d] out the possibility that Officers Murphy, Elsbernd, and Ullrich could have been standing out of frame." (Doc. # 84 at 11). The Court found that "[t]he video evidence [was] sufficient on its own to support the granting of summary judgment, and it [was] further bolstered by the numerous documents, including the external documents from the 911 Center, that indicate Officers Murphy, Elsbernd, and Ullrich were not present or even on duty that evening." (*Id*.). Finally, this Court stated that it was "not convinced" by Plaintiff's testimony that he was "pretty sure" he saw Officers Elsbernd and Ullrich, specifically noting that Plaintiff did "not provide any credible evidence to dispute the video evidence." (*Id*. at 12).

The *Christiansburg* court repeatedly stressed that district courts must resist engaging in post hoc reasoning and urged courts not to issue fees against a civil rights plaintiff unless the court finds that the claim was groundless at the outset or "that the

plaintiff continued to litigate after it clearly became so."  434 U.S. at 422.  In *E.E.O.C. v. Peoplemark, Inc.*, the Sixth Circuit held that a trial court did not err in awarding attorney's fees to the defendant.  732 F.3d 584, 591 (6th Cir. 2013).  There, the E.E.O.C. filed a complaint against Peoplemark, alleging that the defendant had a companywide policy of denying employment opportunities to persons with a felony record.  *Id*. at 587.  This allegation was based on a statement made by the defendant's Vice President and Associate General Counsel.  *Id*.  Eventually, the defendant produced evidence that indicated it did not have any such policy.  *Id*. at 588.  Nevertheless, the case was not dismissed until nearly eight months later.  *Id*. at 589.  Following dismissal, the defendant moved for attorney's fees.  In analyzing whether the defendant was entitled to such fees, the Sixth Circuit noted that at the outset, the plaintiff's case was not groundless.  *Id*. at 591.  However, once discovery clearly indicated that the statements made by the defendant's vice president were demonstrably untrue, the plaintiff should have reassessed its claim.  *Id*.  Ultimately, the Sixth Circuit held that from the moment the evidence demonstrated that the statement was false, "it was unreasonable to continue to litigate the [plaintiff's] pleaded claim because the claim was based on a companywide policy that did not exist."  *Id*.

Here, Plaintiff's January 1, 2021 claim asserted against Defendants Ullrich, Murphy, and Elsbernd was dependent on Plaintiff's recollection of who he saw that evening.  (*See* Doc. # 73 at 12-13 ) (stating that Plaintiff was "pretty sure" he saw Officer Elsbernd, and that he "saw Officer Ullrich in the parking lot[.]").  The Court is reluctant to agree with Defendants that the January 1, 2021 claim was unreasonable from the outset.  Certainly, the events of January 1, 2021 were hectic and Plaintiff was unlikely to correctly

identify every officer in that room that evening. (*See* Doc. # 95 at 6) ("[Plaintiff's] belief that Officers Ullrich, Murphy, and Elsbernd were involved was based on his best recollection under stressful and chaotic circumstances."); *see also* (Doc. # 73 at 13) ("[T]he events escalated quickly, and Wynn was unable to differentiate between the officers he saw."). Moreover, the Court is similarly not inclined to agree that even after the Motion for partial summary judgment was filed Plaintiff's January 1st claim was unreasonable or groundless. While the Court acknowledges that the video evidence plainly depicts that Defendants Ullrich, Murphy, and Elsbernd were not inside the residence on January 1, 2021, the Court nevertheless resonates with the argument made by Plaintiff that he was entitled to discovery that "could shed light on the potential involvement of the named officers." (Doc. # 95 at 6).

However, once Defendants filed the Motion for summary judgment, resubmitting the video evidence and introducing new documents that "rule[d] out the possibility that Officers Murphy, Elsbrend [sic], and Ullrich could have been standing out of frame[,]" Plaintiff should have conceded the claim. (Doc. # 84 at 11). At that point, Plaintiff could no longer rely on his statements that he "may" have seen Officers Ullrich, Murphy, and Elsbernd to proceed on his claim. Rather, Plaintiff "should have known [he] could not prove [his] claim as pleaded" and should have immediately reassessed. *Peoplemark*, 732 F.3d at 593. Plaintiff, in fact, seems to agree, stating in his Response to the present motion that "Plaintiff's belief that Officers Ullrich, Muphy, and Elsbernd could have been present at the scene was not conclusively discredited until the evidence was fully presented at the summary judgment stage." (Doc. # 95 at 6). The Court agrees with Plaintiff that it was not irrefutably clear until summary judgment that the Officers were not

present.  However, once it became clear, Plaintiff should have conceded the claim. Rather, Plaintiff persisted with the baseless claim, requiring Defendants to further defend their position in their Reply.

This conclusion becomes even more apparent with the knowledge that Plaintiff *did* concede a claim against one of the Officers in relation to the January 1, 2021 arrest. Specifically, after a lengthy discussion about how, despite evidence to the contrary, Defendants Ullrich, Murphy, and Elsbernd could have been present that evening, the Plaintiff "concedes that it was more likely than not that Chief Nader was not present on January 1, 2021."  Plaintiff should have similarly conceded the claim as to the rest of the January 1, 2021 Defendants as well.  Rather, Plaintiff relied on his own self-serving claims that he was "pretty sure" Officers Ullrich, Murphy, and Elsbernd were present, despite clear video footage evidence and other documents negating that statement.  Therefore, Defendants' motion for attorney's fees as to the January 1, 2021 claim is **granted in part** as to the fees incurred in their Reply Memorandum (Doc. # 83).

### 3.  *January 16, 2021 arrest*

Defendants next argue that they are entitled to attorney's fees regarding the January 16, 2021 claims because such claims were "completely without legal or factual basis."  (Doc. # 89 at 12).  Plaintiff disagrees, urging the Court not to engage in post hoc reasoning and arguing that just because his January 16, 2021 claims were dismissed does not mean they were frivolous or unreasonable.  (Doc. # 95 at 7-10).

### a.    **Equal protection claim**

Defendants first argue that they are entitled to attorney's fees with respect to the January 16, 2021 equal protection claim because such claim was "completely devoid of

factual support." (Doc. # 89 at 12). Defendants point to the lack of evidence to support Plaintiff's equal protection claim, mainly that Plaintiff "could not supply any evidence of racial discrimination" and rather "elect[ed] instead to launch a barrage of argumentative statements." (*Id*. at 13). Moreover, Defendants argue that the only fact Plaintiff did point to—that he is African American and Officers Ullrich, Murphy, and Elsbernd are white—was so insufficient as to render the claim frivolous from the beginning. (*Id*.)

In his Complaint, Plaintiff alleged that he was "discriminated against in violation of the Constitution" when Officers Murphy, Ullrich, and Elsbernd "administered police services in a discriminatory manner . . . ." (Doc. # 1 ¶ 118). Plaintiff additionally mentioned that Covington Police Department officers "have a pattern, and a practice of discriminating against African Americans . . ." and that he is a recognizable African American. (*Id*. at ¶¶ 109-110). In briefing on Defendants' motion for summary judgment, Plaintiff declined to provide evidence whatsoever that Defendants' actions were because of his race or ethnicity, simply stating that he would not "provide further analysis for [his] Fifth and Fourteenth Amendments [claims] because the Defendants have neglected to address the entirety of the claims made." (Doc. # 73 at 23).

In granting summary judgment to Defendants, this Court acknowledged Plaintiff's lack of evidence, stating that "[Plaintiff] makes incendiary claims that the Covington Police Department has a practice of violating the rights of African American citizens, but points to no other pending lawsuits or examples of such behavior." (Doc. # 84 at 18-19); *see also id*. ("[I]t appears Plaintiff is simply arguing that because he is African American, and the Defendants are white, the arrest was racially motivated.")). In fact, this Court, struck

by the complete lack of evidence provided by Plaintiff, characterized Plaintiff's claims as "bombastic" and "not grounded in reality." (*Id.* at 23-24).

It is clear that Plaintiffs equal protection claim was "based on nothing but speculation and conjecture." *Payne v. Univ. of S. Miss.*, 681 Fed. Appx. 384, 388 (5th Cir. 2017). Therefore, the Court finds that Plaintiff's equal protection claim was frivolous and wholly without foundation from the start of this litigation, and **grants** Defendants fees for their defense of that claim. *See Royal Oak Entm't, LLC v. City of Royal Oak*, 316 F. App'x 482, 487 (6th Cir. 2009) (granting attorney's fees to defendant because plaintiff's equal protection claim "was wholly unsupported by the record."); *see also Payne*, 681 F. App'x at 388 (granting attorney's fees on the grounds that the plaintiff failed to provide any evidence that the defendants' actions were because of his religion.).

### b.    Self-incrimination claim

Defendants next argue that Plaintiff's self-incrimination claim was frivolous because there is clear Supreme Court precedent on the claim and therefore suffered a defect that was "clearly apparent from the beginning." (Doc. # 89 at 14). Plaintiff, in response, acknowledges relevant precedent but argues that his claim was nevertheless non-frivolous because he was "coerced into providing his identification" and the request was "implemented in a discriminatory manner . . . ." (Doc. # 95 at 8-9).

In his Complaint, Plaintiff alleged that his Fifth Amendment rights were violated. In response to Defendants' Motion for summary judgment, he recited the Fifth Amendment's self-incrimination standard but otherwise failed to include specific allegations of Defendants alleged conduct or develop his argument in any substantial or meaningful manner. Similar to the equal protection claim, Plaintiff again explicitly refused to "provide

further analysis" for his self-incrimination claim. (*See* Doc. # 73 at 23). As a result, the Court granted summary judgment to Defendants' noting that it was Plaintiff's burden to develop his argument, and that as such his "failure to include specific allegations of this conduct or develop his argument" was fatal to the self-incrimination claim. (Doc. # 84 at 17). Additionally, the Court noted that even if Plaintiff had developed any meaningful argument, Sixth Circuit precedent makes clear that police officer's do not violate a passenger's constitutional rights by asking for identification. (*Id.*).

Similar to Plaintiffs equal protection claim, it is clear that Plaintiff failed to provide any evidence or meaningful analysis whatsoever in defending his self-incrimination claim. Moreover, even if Plaintiff had attempted to defend his claims, Sixth Circuit precedent is clear that an officer does not violate a passengers Fifth Amendment right by asking for identification.[2] Therefore, the Court finds that Plaintiff's self-incrimination claim was frivolous and wholly without foundation from the start of this litigation, and **grants** Defendants fees for their defense of that claim.

### c.   Excessive force and assault and battery claims

Finally, Defendants argue that the excessive force and assault and battery claims were frivolous because Plaintiff "knew the circumstances under which [Defendants] used force against him" and thus there was no way Plaintiff "could have fairly believed

---

[2]      The Court acknowledges that in his response to Defendants' summary judgment Motion, Plaintiff attempted to argue that Kentucky is not a "stop and identify" jurisdiction, and therefore Defendants Murphy and Elsbernd were not required to request Plaintiff's identification. (Doc. # 73 at 37). While Plaintiff was correct that the case law cited, specifically *Kavanaugh v. Commonwealth,* does state that Kentucky is not a "stop and identify" jurisdiction, Plaintiff, however, failed to note the very next sentence which states that "an officer is constitutionally permitted to request identification." 427 S.W.3d 178, 181 (Ky. 2014)

[Defendants] use of manual force and a vascular restraint was anything other than reasonable." (Doc. # 89 at 15).

The excessive force and assault and battery claims arose from the January 16, 2021 traffic stop in which Plaintiff was a passenger in the car. (Doc. # 84 at 3). After a struggle ensued in which Plaintiff was resisting arrest by stiffening his hands, Defendant Murphy deployed a vascular restraint to subdue Plaintiff long enough to handcuff him. (*Id*. at 3-5). Plaintiff then sued for excessive force, which Defendants moved for summary judgment on. In its Memorandum Opinion and Order on Defendant's Motion, this Court addressed Plaintiff's excessive force claims, applying the *Burgess v. Fischer* three-factor analysis. 735 F.3d 462, 472-73 (6th Cir. 2013). While ultimately finding in favor of Defendants, the Court found factor one, the severity of the crime, to weigh in favor of Plaintiff. (*See* Doc. # 84 at 20) ("There was nothing violent or serious about this crime that would lend itself to a use of force.").

This Court is careful not to engage in post-hoc reasoning here. In doing so, the Court does not find Plaintiff's excessive force claim to be frivolous or unreasonable. The fact that the Court found in favor of Plaintiff regarding one of the three *Burgess* factors does not lend itself to a finding that the claim was frivolous. Certainly, an excessive force claim based on a traffic stop for failing to signal, that ended in a vascular restraint may have seemed, at the outset, like it had some teeth. *See Smith*, 754 F.2d at 183 ("[A] plaintiff may have an entirely reasonable ground for bringing suit even when the law or facts appear questionable or unfavorable at the outset." (citing *Christiansburg*, 434 U.S. at 422))).

Moreover, the Court is not convinced that even at the summary judgment stage the excessive force and assault and battery claims were so frivolous or groundless to meet the *Christiansburg* standard.  As discovery progressed, facts regarding an Internal Affairs investigation and an investigation by the Commonwealth Attorney for Kenton County into Defendant Murphy's use of force came to light.  While neither investigation resulted in action taken against Defendant Murphy, the existence of such investigations does not lead the Court to conclude that Plaintiff was pursuing such frivolous or unreasonable claims.  Certainly, Defendant Murphy's use of a vascular restraint during a traffic stop was atypical enough that it was reviewed both administratively and criminally.

Additionally, the Court notes that the Sixth Circuit has declined to award attorney's fees on excessive force claims with much less supporting evidence.  *See Kidis*, 976 F.3d at 722 (declining to award attorney's fees on an excessive force claim despite the fact that the Officer did not participate in the arrest because "at least some aspects of the record suggested that [the defendant] was near the scene of the arrest, making [the plaintiff's] excessive force claim against [the defendant] at least facially plausible."); *Shelton v. City of Taylor*, 92 Fed. Appx. 178, 181 (6th Cir. 2004) (affirming a district court's denial of attorney's fees to a defendant despite the fact that the plaintiff "produced no evidentiary basis for [the] excessive force claim.").  Therefore, Plaintiff's excessive force and assault and battery claims were within the realm of plausibility and Defendant's motion for attorney's fees on the excessive force and assault and battery claims are **denied**.

### d.    Defendant Ullrich

Defendants additionally allege that Plaintiff's claims against Defendant Ullrich arising out of any of the three events were frivolous.  As the Court has noted, the August 28, 2020 claim was not frivolous.  Given that Defendants do not provide any further analysis for why inclusion of Defendant Ullrich is frivolous outside of that already argued, such inclusion was not frivolous.

Moreover, the January 1, 2021 claim was frivolous after Defendants' filed their Motion for summary judgment, which this Court has already granted Defendants' request for attorney's fees.  Given that one of the reasons this Court has granted attorney's fees on that claim is because Defendant Ullrich was not there, the Court finds no reason to issue separate fees solely for the defense of Defendant Ullrich.

Finally, Defendants argue that because Defendant Ullrich was not involved in the traffic stop or use of force on January 16, 2021, he should not have had to incur any expenses in defending this case.[3]  While the Court, in its Memorandum Opinion and Order, did acknowledge that Defendant Ullrich was not present during the incident, only arriving after the incident concluded, Defendant Ullrich nevertheless was present at the scene at some point.  *See Kidis*, 976 F.3d at 722 (declining to award attorney's fees on an excessive force claim despite the fact that the Officer did not participate in the arrest because "at least some aspects of the record suggested that [the defendant] was near the scene of the arrest, making [the plaintiff's] excessive force claim against [the defendant] at least facially plausible.").  Therefore, the Court **denies** an award of separate attorney's fees for the defense of Defendant Ullrich.

---

[3]    Officer Ullrich was sued in his official capacity as a Covington Police Officer, so any expenses incurred were incurred by the City of Covington.

### 4.  Bad faith

Defendants argue that Plaintiff's claims were both frivolous and filed in bad faith. As this Court has noted, bad faith need not be found to issue an award of attorney's fees, but such a finding does strengthen the case for granting fees. Because the Court has found in favor of Defendants on numerous claims on the grounds that the claims were frivolous, it declines to make a finding of whether Plaintiff acted in bad faith.

### C.    Attorney's Fees Pursuant to 28 U.S.C. § 1927

Defendants additionally allege that Plaintiff's Counsel, Jamir Davis, should be personally required to pay a portion of the attorney's fees because he "unreasonably and vexatiously multiplied the proceedings by, [] bringing, or by refusing to concede, claims when the frivolity of those claims should have been apparent to him."  (Doc. # 89 at 2).

Title 28 U.S.C. § 1927 "authorizes a court to assess fees against an attorney for 'unreasonable and vexatious' multiplication of litigation despite the absence of any conscious impropriety."  *Jones*, 789 F.2d 1230.  While an attorney has the "ethical obligation of zealous advocacy" pursuing claims that are frivolous on the merits or using multiplicative litigation tactics are "unreasonable and vexatious."  *Id*.  The Sixth Circuit has defined "unreasonably and vexatiously" to mean "an intentional departure from proper conduct, or, at a minimum, . . . a reckless disregard of the duty owed by counsel to the court."  *In re Ruben*, 825 F.2d 977, 983 (6th Cir. 1987).  "Accordingly, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney." *Jones,* 789 F.2d at 1230.

In determining whether an attorney pursued a frivolous claim, the Court must be mindful that inadvertence or negligence is not sufficient; a Court must find that the attorney's conduct "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Chambers v. E.W. James & Sons, Inc.*, No. 5:07-135, 2009 WL 192578, at * 3 (E.D. Ky. Jan. 27, 2009); *see also Red Carpet Studios, Div. of Source Advantage, Ltd. v. Slater*, 465 F.3d 642, 646 (6th Cir. 2006) (fees under § 1927 are appropriate only where the attorney "intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings.").

### 1.  August 28, 2020 arrest

Defendants' argument for sanctions pursuant to § 1927 as applied to the August 28, 2020 claims mimic that of their § 1988 argument (*Supra* at III(B)(1)).  The Court does not find that sanctions against Mr. Davis are warranted as to the August 28, 2020 claim.

To issue § 1927 sanctions, a Court must find that the attorney's actions were so egregious as to intentionally depart from proper conduct or disregard the duty owed to the Court.  Here, Mr. Davis, while knowing that the August 28, 2020, claim was time barred, nevertheless brought the claim with an honest reliance on an equitable tolling exception.  While Mr. Davis and his client were ultimately unsuccessful, the Court has already acknowledged that both filing a time-barred claim generally and defending a time-barred claim under an equitable tolling exception does not rise to the level of frivolous. Therefore, Court recognizes the argument as genuine and does not find that an honest reliance on a well-recognized exception rises to such a level of unreasonable and vexatious that Mr. Davis departed from proper conduct or disregarded a duty owed to this

Court.  If anything, reliance on such an exception is evidence of the "zealous advocacy" that Mr. Davis owed to Mr. Wynn.  Therefore, Defendants' Motion for attorney's fees pursuant to § 1927 as to the August 28, 2020 claims are **denied**.

### 2.  January 1, 2021 arrest

Defendants next allege that they are entitled to attorney's fees in connection with the January 1, 2021 claims on the grounds that "even in the face of conclusive proof that Defendants could not be liable" Mr. Davis continued to litigate such claims.  (Doc. # 89 at 22).  In response, Mr. Davis argues that he faced difficulties at the outset in identifying all the officers present at the scene.  Moreover, Mr. Davis argues that even after the discovery period ended, the claims were not baseless because "[t]he testimony provided, combined with the conditions under which the events occurred justified continuing the claims . . ."  (Doc. # 95 at 15).

As previously discussed (*supra* at III(B)(2)), the Court agrees that at the outset, such claims were not baseless.  However, the Court would be remiss in finding any reason to continue to pursue such claims at the summary judgment stage after Defendants submitted conclusive evidence that Defendants Ullrich, Murphy, and Elsbernd were not present that evening.  While the Court acknowledges that Mr. Davis has an "ethical obligation of zealous advocacy," Mr. Davis's advocacy with respect to the January 1, 2021 claim went far beyond that.  *Jones*, 789 F.2d 1230.  Mr. Davis's failure to concede the January 1, 2021 claim was vexatious conduct and needlessly increased the costs of litigation. Certainly, Mr. Davis knew, or should have known, that after being presented with undisputable and conclusive evidence, he was unreasonably and vexatiously duplicating litigation and falling far below the duty he owed to this Court.  It is clear to the

Court that, "[Mr. Davis's] actions were taken, at the very least, in the face of an obvious risk that he was increasing the work on the other party without advancing the litigation." *Red Carpet Studios*, 465 F.3d at 647. Accordingly, Defendants' motion for attorney's fees pursuant to § 1927 is **granted** as to the fees incurred from Defendants' Reply Memorandum (Doc. # 83).

### 3.  January 16, 2021 arrest

Defendants' arguments for each claim in relation to the January 16, 2021 arrest mirrors their arguments for their § 1988 claim. Accordingly, the Court will not restate each argument.

#### a.    Equal protection claim

As noted above, Plaintiff presented no evidence whatsoever to support his claim that Defendants Murphy and Elsbernd discriminated against Plaintiff on the basis of his race or ethnicity. The entirety of the analysis or explanation given was, seemingly, that Plaintiff is a recognizable African American and Defendants Murphy and Elsbernd are white. Moreover, when put in a position to defend such claims in summary judgment, Mr. Davis, on behalf of his client, explicitly refused to present to this Court any explanation, analysis, or evidence. (*See* Doc. # 73 at 23) (stating that Plaintiff refused to "provide further analysis for the Fifth and Fourteenth Amendments because the Defendants have neglected to address the entirety of the claims made.").

Therefore, this Court has no hesitation in determining that Mr. Davis's conduct was more than just "[s]imple inadvertence or negligence." *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001). Rather, the equal protection claim, and Mr. Davis's surrounding conduct was so frivolous, so vexatious and unreasonable, that this Court sought to

characterize the claim as incendiary, bombastic, and not grounded in reality. (Doc. # 84 at 18, 23, and 24). Mr. Davis's decision to make such incendiary claims against Defendants and then refusing to provide this Court with even a modicum of evidence for such claims falls far below the "obligations owed by a member of the bar to the court, and which, as a result, cause[d] additional expense to the opposing party." *Riddle*, 266 F.3d at 553. Certainly, a Plaintiff's attorney explicitly declining to elaborate and defend claims they pursued on behalf of their client, claims which they know, or should know, are frivolous, goes far beyond simple inadvertence or negligence. Rather this was "conduct on the part of [Mr. Davis] that trial judges, applying the collective wisdom, could agree falls short of the obligations owed by a member of the bar to the [C]ourt . . . ." *Id*. Therefore, the Court **grants** § 1927 sanctions as to the equal protection claim.

### b. Self-Incrimination claim.

Likewise, the Court grants § 1927 sanctions as to the self-incrimination claim as well. As previously discussed, relevant Sixth Circuit case law has established that officers do not violate a passengers Fifth Amendment right when asking for identification. *See United States v. Alexander*, 467 Fed. App'x 355, 362 (6th Cir. 2012). Moreover, in attempting to argue Plaintiff's position, Mr. Davis referenced a Kentucky Supreme Court case, which states very plainly and explicitly that "an officer is constitutionally permitted to request identification." *Kavanaugh*, 427 S.W.3d at 181. Thus, it is strikingly clear to the Court that Mr. Davis was most certainly aware of the relevant standard and should have known that pursuing such a claim was baseless and frivolous. Moreover, Mr. Davis seemingly attempted to argue that despite the clear and well-known standard, the Defendants nevertheless violated Plaintiff's Fifth Amendment right when they asked for

the identification in a discriminatory and coercive manner. However, Mr. Davis subsequently refused to elaborate, expand, or provide any example at all of this behavior. In fact, Mr. Davis explicitly stated that he declined to elaborate on such a claim.

As with the equal protection claim, the Court notes that filing a frivolous claim, and then explicitly refusing to defend that claim, most certainly does not reach the level of obligation Mr. Davis owed to this Court. It is clear that Mr. Davis went far beyond merely "fail[ing] to undertake a reasonable inquiry into the basis for a claim[.]" Rather, he filed and defended a claim that he knew, or reasonably should have known, was frivolous, forcing Defendants to reply to such claims, and leaving this Court to parse out the frivolous and wholly undeveloped arguments. Thus, the Court holds that Mr. Davis, "needlessly obstruct[ed] the litigation of nonfrivolous claims[,]" and **grants** § 1927 sanctions as to the self-incrimination claim. *Riddle*, 266 F.3d at 553.

### b.    Excessive force and assault and battery claims

The Court has previously found that the excessive force and assault and battery claims were not frivolous. Given that Defendants have made no further substantial argument into why § 1927 sanctions should be awarded as to the excessive force and assault and battery claims, the Court **denies** the Defendants' Motion as to § 1927 fees in relation to such claims.

## IV.    CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)    Defendants' Motion for Attorney's Fees (Doc. # 89) is **GRANTED IN PART AND DENIED IN PART**, as follows: **granted** as to attorney fees in relation to the January 1, 2021 claim; January 16, 2021 equal protection and self-

26

incrimination claim, pursuant to § 1988; and January 1, 2021 claim; January 16, 2021 equal protection and self-incrimination claim pursuant to § 1927, and **denied** as to all other claims;

(2)     The ACLU's Motion for Leave to file amicus curiae (Doc. # 93) is **DENIED**;

(3)     **Within fourteen (14) days of the entry of this Order**, defense counsel shall file Affidavits establishing the amounts and reasonableness of the fees and costs incurred and if necessary, segregate the fees and costs incurred in defending claims arising from each of the three separate arrests.

This 8th day of April, 2025.



Signed By:

*David L. Bunning*

**Chief United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Cov2021\21-137 MOO Award of Attorney Fees.docx